# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**MOUNTAIN STATE CARBON, LLC,**

    Plaintiff,

v.                                                  Civil Action No. 5:12-CV-87
                                                                   (BAILEY)

**CENTRAL WEST VIRGINIA ENERGY COMPANY,**
**MASSEY ENERGY COMPANY,**
n/k/a Alpha Appalachia Holdings, Inc.,
**MASSEY COAL SALES COMPANY, INC.,**
n/k/a Appalachia Coal Sales Company, Inc.,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## REMANDING MATTER TO THE CIRCUIT COURT OF BROOKE COUNTY

Pending before the Court is the plaintiff's Motion to Remand [Doc. 12], filed June 15, 2012. The defendants responded on June 22, 2012 [Doc. 21], and the plaintiff replied on June 25, 2012 [Doc. 24]. Having reviewed the record and considered the arguments of the parties, this Court concludes that the plaintiff's motion should be **GRANTED**.

## BACKGROUND

**I.**     **Factual Allegations**

In 1993, Wheeling Pittsburgh Steel Corporation ("Wheeling Pitt") entered into a ten-year coal supply agreement (the "Coal Supply Agreement") with defendant Central West Virginia Energy Company ("Central Energy"). Pursuant to the Coal Supply Agreement, Central Energy agreed to supply, and Wheeling Pitt agreed to purchase from Central Energy, one hundred percent of the metallurgical coal requirements of its Follansbee, West

1

Virginia, plant. In 2002, an amendment to the Coal Supply Agreement extended the term of the contract seven years and specified that each contract year ran from November 1st to October 31st. In 2005, plaintiff Mountain State Carbon, LLC ("Mountain State") was formed as a joint venture between Wheeling Pitt and SNA Carbon, LLC, to own and operate the Follansbee plant under the Coal Supply Agreement.

Prior to the commencement of each contract year, Mountain State is required to advise Central Energy of its annual coal requirements for the upcoming contract year. Central Energy is then required to deliver, and Mountain State is required to accept, not less then 95% and not more than 105% of the identified annual requirements, deliverable during that contract year. Mountain State has the right to allocate its annual requirements for delivery across the four quarters of the contract year. However, at least 90 days before an upcoming quarter, Mountain State must give Central Energy written notice of the amount of annual requirements to be delivered during that quarter. If Mountain State fails to give proper notice, then the parties operate from the quantity of coal delivered during the preceding quarter. Central Energy is required to deliver, and Mountain State is required to accept, not less than 90% and not more than 110% of the nominated quantity of coal, such coal deliverable during that quarter. Though not contractually required, Central Energy obtained its coal from Massey Energy Company, n/k/a Alpha Appalachia Holdings, Inc., through Massey Coal Sales Company, Inc., n/k/a Appalachia Coal Sales Company, Inc. (collectively "Massey").

During the first half of 2008, demand for steel (and thus metallurgical coal) rose significantly, pushing market prices well beyond the price agreed to in the Coal Supply Agreement. According to Mountain State, Massey consequently directed Central Energy

2

to reduce its Mountain State deliveries so that Massey could sell and ship more coal to other customers at higher prices.

In August 2008, the demand for steel dropped dramatically. At that time, Wheeling Pitt was acquired by Severstal North America, Inc. ("Severstal U.S."), the United States domestic arm of OAO Severstal ("Severstal Russia"), and renamed Severstal Wheeling, Inc ("Severstal Wheeling"). Though due on August 3, 2008, Mountain State failed to provide Central Energy with 90 days notice of the quantity of coal it required for the quarter to commence on November 1, 2008. Instead, by letter dated October 28, 2008, Mountain State advised Central Energy that it required 1,128,000 tons of coal for the upcoming contract year and only 228,000 tons for the first quarter. By letter dated January 30, 2009, Mountain State advised Central Energy that it wished to reduce the nominated quantity it was obligated to accept during the second quarter. In the same letter, Mountain State advised that it would require delivery of 195,000 tons during the third quarter. By letter dated April 30, 2009, Mountain State advised that it was nominating zero tons for the fourth quarter. Mountain State failed to accept not less than 95% of its annual requirements for the contract year of 2009. According to Central Energy, Mountain State acted by and through Severstal Wheeling and at the direction of the other Severstal entities.

## II. Procedural History

On August 27, 2008, Mountain State sued Central Energy for breach of the Coal Supply Agreement in the Circuit Court of Brooke County, West Virginia. A month later, Mountain State joined Massey with a claim of tortious interference with contractual relations. After four years of discovery, trial is currently scheduled to commence on July 30, 2012.

3

In the meantime, on April 29, 2009, Central Energy filed a declaratory judgment action against Mountain State and Severstal Wheeling in the United States District Court for the Southern District of West Virginia seeking a number of declaratory judgments, including that the Coal Supply Agreement required Mountain State to accept not less than 95% of the 1,128,000 tons of coal that it nominated for delivery in the contract year of 2009. In June 2009, Central Energy joined SNA Carbon, Severstal U.S., and Severstal Russia, and added claims for breach of contract and tortious misconduct. In July 2009, Mountain State and Severstal Wheeling moved to dismiss for lack of subject matter jurisdiction, particularly asserting a lack of diversity between Central Energy and Severstal Wheeling. In March 2010, the Southern District court agreed that there was no diversity between Central Energy, a West Virginia corporation, and Severstal Wheeling, a Delaware corporation with its principal place of business in Wheeling. Central Energy appealed and on April 13, 2011, the United States Court of Appeals for the Fourth Circuit reversed, finding that Severstal Wheeling had its principal place of business in Dearborn, Michigan, and thus that the Southern District court had diversity jurisdiction. ***Cent. W.Va. Energy Co. v. Mt. State Carbon, LLC***, 636 F.3d 101 (4th Cir. 2011). Severstal U.S. subsequently sold Severstal Wheeling to RG Steel Wheeling, LLC ("RG Steel").

On May 31, 2012, RG Steel filed a Chapter 11 reorganization petition in the United States Bankruptcy Court for the District of Delaware. As a result, Central Energy and Massey removed the Brooke County action to this Court on June 13, 2012, pursuant to 28 U.S.C. §§ 1452(a) and 1334(b), asserting that this matter is a civil proceeding related to RG Steel's bankruptcy case [Doc.1].

4

On April 4, 2012, Mountain State filed the instant Motion to Remand [Doc. 12] requesting that this Court abstain from hearing its case and remand this matter back to the Circuit Court of Brooke County. Mountain State offers three bases for abstention. First, Mountain State argues that abstention is mandated by 28 U.S.C. § 1334(c)(2). Second, Mountain State asserts that abstention is permitted by 28 U.S.C. § 1334(c)(1). Third, Mountain State contends that abstention is equitable pursuant to 28 U.S.C. § 1452(b).

## DISCUSSION

### I. Applicable Standards

#### A. Removal of Civil Proceedings "Related To" Bankruptcy Cases

Title 28 U.S.C. § 1452(a) states, "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Title 28 U.S.C. § 1334(b) provides, "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court of courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11."

#### B. Abstention from Civil Proceedings "Related To" Bankruptcy Cases

##### 1. Mandatory Abstention

Title 28 U.S.C. § 1334(c)(2) provides in whole as follows:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States

5

absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

### 2. Permissive Abstention

Title 28 U.S.C. § 1334(c)(1) states as relevant here:

[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

### 3. Equitable Abstention

Title 28 U.S.C. § 1452(b) provides in pertinent part:

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

## II. Analysis

### A. "Related To" Civil Proceeding

In their Notice of Removal [Doc.1], the defendants assert jurisdiction under 28 U.S.C. § 1334, arguing that this civil proceeding relates to RG Steel's bankruptcy case currently pending in the District of Delaware. As explained below, this Court agrees with the defendants' assertion of jurisdiction.

"The Fourth Circuit has adopted the test set forth in **Pacor, Inc. v. Higgins**, 743 F.2d 984 (3d Cir. 1984), for determining whether a civil proceeding 'relates to' a bankruptcy case. See **Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)**, 124 F.3d 619, 625 (4th Cir. 1997)." **Blanton v. IMN Fin. Corp.**, 260 B.R. 257, 261 (M.D.N.C. 2001). The **Pacor** Court articulated that test as follows:

> Whether a civil proceeding is related to bankruptcy is [determined by] whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

***Pacor***, 743 F.2d at 944 (emphasis in original) (citations omitted). "The Fourth Circuit has construed the ***Pacor*** test broadly, stating that the test 'does not require certain or likely alteration of the debtor's rights, liabilities, options, or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction." ***Blanton***, 260 B.R. at 261-262 (quoting ***In re Celotex Corp.***, 124 F.3d at 626).

Here, there can be no question that the outcome of this case could conceivably have an effect on RG Steel's bankruptcy estate, which is being administered in the District of Delaware. Specifically, due to RG Steel's 50% ownership of Mountain State, any recovery in this action could conceivably increase the size of RG Steel's bankruptcy estate for the benefit of his creditors. As such, this civil proceeding is "related to" RG Steel's bankruptcy case. Thus, this Court has non-exclusive original jurisdiction to hear this matter pursuant to § 1334(b).

### B. Motion to Remand

In its Motion to Remand, Mountain State argues that this Court should nevertheless abstain from hearing this matter, citing three alternative doctrines of abstention: (1)

mandatory abstention, (2) permissive abstention, and (3) equitable abstention.  The Court considers the applicability of each doctrine below.

### 1. Mandatory Abstention

"[M]andatory abstention is appropriate under § 1334(c)(2) when the following requirements are met: (1) a timely motion is made; (2) the proceeding is based on a state law claim or a state law cause of action; (3) the proceeding is related to a case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." ***Blanton***, 260 B.R. at 263.

Concerning the fifth element, Mountain State asserts that it and Central Energy are "companies organized and located in West Virginia" and thus that this lawsuit "could not have been pursued in federal court based on diversity jurisdiction." ([Doc. 13] at 13).  This Court disagrees.

The analysis of the Severstal Wheeling-component of Mountain State's citizenship begins and ends with the Fourth Circuit's decision in ***Cent. W.Va Energy Co. v. Mt. State Carbon, LLC***, 636 F.3d 101 (4th Cir. 2011).  "For purposes of diversity jurisdiction, the citizenship of a limited liability company (such as Mountain State) is determined by the citizenship of all of its members (such as Severstal Wheeling)."  ***Id.*** at 103 (citation omitted).  "Further, a corporation (such as Severstal Wheeling) 'shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . .."  ***Id.*** (quoting 28 U.S.C. § 1332(c)(1)).  Applying ***Hertz Corp. v. Friend***, — U.S. — , 130 S.Ct. 1181 (2010), the Fourth Circuit concluded that the

8

principal place of business for Severstal Wheeling was Dearborn, Michigan.

SNA Carbon, Mountain State's only other member, is also diverse from Central Energy, a West Virginia corporation with its principal place of business in West Virginia. SNA Carbon's sole member is Severstal U.S., which was incorporated in Delaware and has its principal place of business in Dearborn, Michigan.

Therefore, when commenced, this case featured two completely diverse parties: Mountain State (a citizen of Michigan and Delaware) versus Central Energy (a citizen of West Virginia). *See **Blanton***, 260 B.R. at 265 ("The availability of diversity jurisdiction *at the commencement of the case* is enough to prevent application of the mandatory abstention provision found in § 1334(c)(2).") (emphasis added). Because diversity jurisdiction was available to Mountain State at the commencement of this case, § 1334(c)(2) does not require this Court to abstain.

### 2. Permissive Abstention / Equitable Remand

"In analyzing whether permissive abstention is appropriate a court should consider the following factors:

> (1) the court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves questions of state law better addressed by the state court; (7) comity considerations; (8) any prejudice to the involuntarily removed parties; (9) forum non conveniens; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of a right to a jury trial.

*Cline v. Quicken Loans Inc.*, 2011 WL 2633085, *6 (N.D. W.Va. July 5, 2011) (quoting *Blanton*, 260 B.R. at 265). "Courts have noted that the factors for judging the propriety of permissive abstention are essentially identical to the factors articulated for determining the propriety of remand under 28 U.S.C. § 1452(b)." *Cline*, 2011 WL 2633085, at *6 (quoting *Blanton*, 260 B.R. at 265 n. 5).

Based on the above factors, this Court finds that remand is appropriate. Though a number of factors weigh in favor of maintaining federal jurisdiction, the case for remand is significantly more compelling. First, this action exclusively involves state law claims and non-debtor parties. Second, this action bears only a remote connection to the bankruptcy case of RG Steel. Third, and most importantly, the economical use of judicial resources will be undeniably better served by remand to a state court that is equipped with nearly four years of experience not only with the ins and outs of the parties' contentions but also with the evidence discovered and anticipated to be presented at trial in support of those contentions, rather than remaining with a district court or being transferred to a bankruptcy court that will be asked to start back at day one. Accordingly, this Court concludes that this matter should be remanded pursuant to §§ 1334(c)(1) and 1452(b).

## **CONCLUSION**

For the foregoing reasons, this Court hereby **GRANTS** the plaintiff's Motion to Remand **[Doc. 12]** and **REMANDS** the above-styled civil action to the Circuit Court of Brooke County, West Virginia. All other pending motions filed since removal **[Docs. 7, 9, 10, 12, 15, & 16]** are hereby **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to the counsel of record and to the Circuit Court of Brooke County.

**DATED:** June 26, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE